IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:  4:12-cv-00080 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| v. | ) | |
| | ) | |
| JANTZ S. CLINKSCALE, *et. al.*, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendants. | ) | **AND ORDER** |

This matter comes before the Court on Plaintiff United States of America's ("Plaintiff" or "United States") Motion for Summary Judgment filed on October 31, 2013.  Doc. 29.  The United States moves the Court pursuant to Federal Rule of Civil Procedure 56 for an order adjudging that Defendants Jantz S. Clinkscale and Sheila D. Clinkscale ("Clinkscales") are personally liable, jointly and severally, to the United States in the amount of $1,078,372.81, plus statutory additions and accruals from October 31, 2013, for failure to pay tax liabilities assessed for the tax years 1994 through 1997.  Doc. 29, p.1.  The United States also requests that this Court enforce the liens on the real property owned by the Clinkscales, which is described in ¶10 of the Complaint, by ordering a judicial sale of that property. Id.

The Clinkscales have filed an Opposition to the United States' Motion for Summary Judgment in which they argue only one issue: they contend that the United States' claim for the tax year 1997 is barred by the statute of limitations.  Doc. 30.  The United States has filed a Reply (Doc. 31) and the matter is now ripe for decision.

For the reasons discussed below, the Court **GRANTS** the United States' Motion for Summary Judgment (Doc. 29) and enters judgment against the Clinkscales in the amount of $1,078,372.81, plus statutory additions and accruals from October 31, 2013.  Further, the Court **ORDERS** the United States and Defendant Trumbull County, Ohio,[1]  to submit a joint proposed order for a sale of the property described in ¶10 of the Complaint and to indicate in that joint proposed order the proposed distribution of proceeds of such sale between the United States and Trumbull County within 60 days of this Order.

## I.  Background

### A.  Factual Background

The following factual information is taken from a 2005 United States Tax Court opinion in a case brought by the Clinkscales:

> During each of the years 1994, 1995, 1996, and 1997, Mr. Clinkscale (1) engaged in a criminal enterprise to distribute cocaine from which he earned substantial income; (2) conducted financial activities in currency (i.e., cash) with the intent to evade Federal income tax (tax); (3) structured various financial activities in an attempt to avoid Federal reporting requirements with the intent to evade tax; and (4) failed to maintain complete and adequate books and accounts of income-producing activities as required by applicable provisions of the Code and the regulations thereunder.
>
> Mr. Clinkscale and Ms. Clinkscale filed jointly tax returns for the taxable years 1994, 1995, 1996, and 1997. For each of the taxable years 1994, 1995, 1996, and 1997, Mr. Clinkscale[2] provided incomplete and/or erroneous information to their tax return preparers and fraudulently, with the intent to evade tax, filed a tax return that substantially understated adjusted gross income. Specifically, in the joint returns for the taxable years 1994, 1995, 1996, and 1997, Mr. Clinkscale underreported adjusted gross income shown in such returns by $ 83,821.91, $ 101,633.41, $ 250,335.10, and $325,199.43, respectively and fraudulently, with the intent to evade tax, understated tax shown in such returns by $ 19,927, $ 25,238, $ 71,385, and $ 107,698, respectively.

---

[1] Defendant Trumbull County has asserted that it has an interest in the real property in question.  Cmplt. ¶5; Doc. 3.

[2] Sheila D. Clinkscale and the Commissioner of Internal Revenue filed a stipulation of settled issues in which Ms. Clinkscale agreed to all of the determinations for the taxable years 1994, 1995, and 1996, that the Commissioner made in the notice of deficiency issued to her and Mr. Clinkscale.

On a date not disclosed by the record after September 2, 1998, and before February 28, 2000, a Federal grand jury in the United States District Court for the Northern District of Ohio, Eastern Division, indicted Mr. Clinkscale for, and charged him with, inter alia, violating (1) 21 U.S.C. section 841(a)(1) and (b)(1)(A) by possessing cocaine with the intent to distribute during the period January 1993 through at least September 2, 1998, and (2) 26 U.S.C. section 7206(1) by filing a false and fraudulent tax return for each of the taxable years 1994, 1995, 1996, and 1997. On February 28, 2000, Mr. Clinkscale entered into a plea agreement (Mr. Clinkscale's plea agreement) in which he pleaded guilty to, inter alia, the above- described first charge and so much of the above-described second charge as related only to the taxable year 1997.[3]

* * *

The record establishes that, during each of the taxable years 1994, 1995, and 1996,[4] Mr. Clinkscale (1) engaged in a criminal enterprise to distribute cocaine from which he earned substantial income; (2) conducted financial activities in currency (i.e., cash) with the intent to evade tax; (3) structured various financial activities in an attempt to avoid Federal reporting requirements with the intent to evade tax; and (4) failed to maintain complete and adequate books and accounts of income-producing activities as required by applicable provisions of the Code and the regulations thereunder. The record also establishes that, for each of the taxable years 1994, 1995, and 1996, Mr. Clinkscale provided incomplete and/or erroneous information to tax return preparers and fraudulently, with the intent to evade tax, filed a tax return that substantially understated adjusted gross income and tax.

*Clinkscale v. Comm'r*, T.C. Memo 2005-181 (T.C. 2005), *2-*5, *13-14; *See also Clinkscale v. United States*, 367 F. Supp. 2d 1150, 1153 (N.D. Ohio 2005).

A delegate of the Secretary of the Treasury made the following assessments against the

Clinkscales on the dates indicated for federal income taxes, statutory additions, and interests:

---

[3] A copy of Mr. Clinkscale's plea agreement is attached as Exhibit A to the Declaration of David M. Steiner submitted in support of the United States' Motion for Summary Judgment.  Doc. 29-1, p. 16.  In the Plea Agreement, Mr. Clinkscale stipulated to the amounts by which he underreported his income for the years 1994-1997.  Id.

[4] In the Tax Court, Mr. Clinkscale only challenged tax assessments and penalties for tax years 1994-1996.  Tax year 1997 was not before the Tax Court.  As noted above, Mr. Clinkscale previously pled guilty to filing a false and fraudulent tax return for the 1997 tax year.  *Clinkscale v. Comm'r*, T.C. Memo 2005-181 (T.C. 2005), *2-*5, *13-14; *See also Clinkscale v. United States*, 367 F. Supp. 2d 1150, 1153 (N.D. Ohio 2005).

| Tax Period | Date of Assessment | Unpaid Assessed Balance | Accrued Liability as of 10/31/2013 | Total |
|---|---|---|---|---|
| 1994 | April 3, 2006 | $78,369.15 | $32,682.15 | $111,051.30 |
| 1995 | April 3, 2006 | $92,656.40 | $40,578.01 | $133,234.41 |
| 1996 | April 3, 2006 | $249,923.04 | $107,414.63 | $357,337.67 |
| 1997 | July 2, 2001 | $256,427.96 | $220,321.47 | $476,749.43 |
| | | | Total | $1,078,372.81 |

Doc. 1, Complaint ("Cmplt.") ¶7; Doc. 29-1, Ex. F., pp.1-8.  Notices and demand for payment

were sent to the Clinkscales.  Id. at p. 4, ¶5-6.  However, the Clinkscales did not pay the taxes

assessed against them in full.  Id.  Consequently, in 2006 tax liens were recorded in Trumbull

County, Ohio against the Clinkscales' assets.  Cmplt. ¶7; Doc. 29-1, pp. 20, 27, 33, 39.

### B.  Procedural Background

On January 12, 2012, the United States filed its Complaint in this matter against the

Clinkscales; Defendant Treasurer of Trumbull County, Ohio ("Trumbull County"); and

Defendant PNC, Bank, N.A. ("PNC") seeking: (a) to collect the unpaid federal taxes and

statutory accruals for the tax years 1994-1997 from the Clinkscales (Count I); and (b) to enforce

tax liens upon the real property owned by the Clinkscales located at 2934 Anderson Morris

Road, Niles, OH  44446 (Count II).  Cmplt. ¶¶ 7-10.   The United States also seeks a judicial

order of sale of the aforementioned real property and to "determine the respective interests of the

defendants in the real property and the relative priority and amount or percentage of distribution

that each defendant and the United States shall receive from the proceeds of a Court-ordered sale

of that property."  Id., Doc. 1, p. 2.

On March 22, 2012, this Court granted the United States' Motion for Default Judgment against PNC and determined that PNC "has no enforceable interest in the property upon which the United States seeks to enforce its lien in this action."  Doc. 18, p. 1.  Trumbull County answered the Complaint, asserting an interest in the aforementioned property and stating that "taxes, penalty, and interest thereon are a first statutory lien on the said property under Ohio Revised Code §5721.10."  Doc. 3, p. 2.

On March 30, 2012, the Clinkscales filed a Motion to Dismiss the Complaint for failure to state a claim, arguing that the portion of the Complaint relating to tax year 1997 was time-barred.  Doc. 4.  The Complaint states that the action was timely filed because the running of the 10-year statute of limitations was twice tolled due to two Offers-in-Compromise by the Clinkscales.  Cmplt. ¶8.  The Clinkscales argued that they were "not accepted into the offer-in-compromise program for the second filing," and, therefore, "no additional time extension was warranted."  Doc. 4, p. 2.  This Court denied the Clinkscales' motion stating that, "absent competent evidence to the contrary submitted at the summary judgment stage, both Offers-in-Compromise suspend the statute of limitations and extend the Collection Statute Expiration Date…by at least nine (9) months, which make the complaint filed January 12, 2012 timely."  Doc. 7. p. 3.

## II.  Summary Judgment Standard

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  But "summary judgment will not lie if the ... evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986).  In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  The movant therefore has the burden of establishing that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993).

If the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *see also McLean v. 988011 Ont., Ltd.,* 224 F.3d 797, 800 (6th Cir.2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson,* 477 U.S. at 248, 252, 106 S.Ct. 2505.  Rather, there must be evidence on which a jury could reasonably find for the nonmovant. *McLean,* 224 F.3d at 800 (*citing Anderson,* 477 U.S. at 252, 106 S.Ct. 2505).  When ruling on a motion for summary judgment, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989).  Instead, the Court may rely on the evidence called to its attention by the parties. *Id.*

### III.  Analysis

#### A.    Clinkscale's Federal Income Tax Liability

In its Motion for Summary Judgment, the United States seeks "judgment in favor of the government, ordering and adjudging that Defendants Jantz S. and Sheila D. Clinkscale owe the

United States the amount of $1,078,372.81, with statutory additions and accruals from October 31, 2013…"  Doc. 29, p. 1.  The Federal Government can establish a prima facie case of tax liability by producing Certificates of Assessments and Payments. *Sinder v. United States,* 655 F.2d 729, 731 (6th Cir.19*81); *United States v. Noble,* 3 Fed.Appx. 331, 333–34 (6th Cir*.2001); *see also* *Zack v. Comm'r,* 692 F.2d 28, 29 (6th Cir.198*2) (holding that the tax commissioner's determination of tax liability is presumptively correct).  In the absence of evidence to the contrary, Certificates of Assessments and Payments are sufficient proof of the adequacy of propriety of notices and assessments that have been made by the IRS. *Gentry v. United States,* 962 F.2d 555, 557 (6th Cir.19*92) (citing to *United States v. Walton,* 909 F.2d 915, 918–19 (6th Cir*.1990)).  Moreover, the IRS Commissioner's determination of a tax deficiency is generally presumptively correct and the taxpayer has the burden of proving that the determination is erroneous or arbitrary. *United States v. Janis,* 428 U.S. 433, 440, 96 S.Ct. 3021, 3025, 49 L.Ed.2d 1046 (1976); *Kearns v. C.I.R.,* 979 F.2d 1176, 1178 (6th Cir. 1*992); *United States v. Walton,* 909 F.2d 915, 918 (6th Cir. 19*90); *Traficant v. Commissioner,* 884 F.2d 258, 263 (6th Cir.19*89); *Calderone v. United States,* 799 F.2d 254, 258 (6th Cir.19*86); *Schrader v. Commissioner,* 420 F.2d 443, 444 (6th Cir.19*70). "Generally, the taxpayer will bear not only the burden of production, but also the burden of proving by a preponderance of the evidence that the Commissioner's assessment is 'arbitrary and excessive.' " *Walton,* 909 F.2d at 918 (*citing Helvering,* 293 U.S. at 515, 55 S.Ct. at 290; *Traficant,* 884 F.2d at 263; *Calderone,* 799 F.2d at 258).

In this case, the United States has submitted Certificates of Assessments and Payments for income tax years 1994, 1995, and 1996.  Doc. 29-1, Exs. B.-D.  The United States also attached an "Official Transcript" for income tax year 1997.  Id. at Ex. E.

### 1. Tax Years 1994-1996

The Clinkscales do not contest the assessments, nor do they provide any evidence that the Certificates of Assessments and Payments are erroneous, for the 1994, 1995, and 1996 tax years. Thus, the United States has made a prima facie case of tax liability. *See United States v. Toler, 666 F. Supp. 2d 872, 881 (S.D. Ohio 20*09).

### 2. 1997 Tax Year

Similarly, the Clinkscales do not contest the assessments, nor do they provide any evidence that the Official Transcript is erroneous, for the 1997 tax year.  Instead, in their Memorandum Contra to Plaintiff's Motion for Summary Judgment (Doc. 30), the Clinkscales claim that a genuine issue of material fact exists regarding the "effectiveness of the federal tax lien that the IRS is attempting to enforce."  Doc. 30, p. 2.  More specifically, the Clinkscales claim that the statute of limitations expired for collection of the assessment for the 1997 tax year prior to the filing of the Complaint and, therefore, the United States should be denied summary judgment for the 1997 tax year.  Id.

The Internal Revenue Code provides that the length of time in which to collect taxes by levy or court proceeding is "within 10 years after the assessment of the tax" is made.  26 U.S.C. § 6502.  Both parties agree that the statute of limitations commenced to run on July 2, 2001, when the United States assessed the 1997 taxes.  Doc. 1, ¶¶7-8; Doc. 30, p. 2.  Both parties also agree that the statute of limitations is tolled during the pendency of an Offer-in-Compromise ("OIC") and for 30 days thereafter if the offer is rejected.  Doc. 30, p. 2; Doc. 31, p. 1; *See* IRC § 26 U.S.C. §6331(k)(1).[5]  The parties disagree as to whether the Clinkscales' second OIC served to toll the statute of limitations.

---

[5] 26 U.S.C. §6331(k) No levy while certain offers pending or installment agreement pending or in effect.—

**Position of the United States.**  The United States alleges that the Clinkscales filed two OICs which tolled the statute of limitations for a cumulative period of nine months.  Cmplt., ¶8; Doc. 31, p.1.  The United States claims that the Clinkscales first submitted an OIC on November 3, 2008, which the Internal Revenue Service ("IRS") rejected on March 16, 2009.  Doc. 31, p. 2; Doc. 29-1, p. 40.  Thus, the United States asserts that the first OIC tolled the statute of limitations on collections from November 3, 2008, until April 15, 2009, a total of 163 days or a period of over five months.  Id.

The United States also claims that the Clinkscales submitted a second OIC on May 23, 2011, which was rejected by the IRS on September 16, 2011.  Id; Doc. 29-1, p. 40.  Thus, the United States asserts that the second OIC tolled the statute of limitations on collections from May 23, 2011, until October 16, 2011, a total of 146 days or a period of over four months.

Based on the above, the United States claims that the limitations period was tolled for a total of 309 days or a period of more than nine months.  As previously noted, the statute of limitations commenced on July 2, 2001.  Therefore, without tolling, the statute of limitations would have expired on July 2, 2011.  If the statute of limitations was tolled for 309 days, as argued by the United States, then the statute of limitations would not have expired until May 6, 2012, and the Complaint was timely filed.

**Position of the Clinkscales.**  The Clinkscales agree that the initial OIC made on November 3, 2008, tolled the running of the statute of limitations for five months.  Doc. 30, p. 2. However, the Clinkscales dispute that the second OIC tolled the limitations period because they

---

(1) Offer-in-compromise pending.--No levy may be made under subsection (a) on the property or rights to property of any person with respect to any unpaid tax--

  (A) during the period that an offer-in-compromise by such person under section 7122 of such unpaid tax is pending with the Secretary; and
  (B) if such offer is rejected by the Secretary, during the 30 days thereafter (and, if an appeal of such rejection is filed within such 30 days, during the period that such appeal is pending).
  For purposes of subparagraph (A), an offer is pending beginning on the date the Secretary accepts such offer for processing.

argue that they "were not accepted into the offer-in-compromise program for their second filing" on May 23, 2011.  Id.  If the statute of limitations period was not tolled because of the second OIC than the limitations period would have expired on October 26, 2011 (116 days after July 2, 2011) and the January 12, 2012, Complaint would be untimely as to the assessment related to the 1997 tax year.

**The United States' Complaint is timely filed for the 1997 tax year.**  The United States attached to its Motion for Summary Judgment a copy of the Clinkscale's IRS Account Transcript for the tax period ending December 31, 1997, which was certified by Kathy Peirce, Disclosure Specialist of the Internal Revenue Service.  Doc. 29-1, Ex. E, pp. 37-40.  The Account Transcript shows that an OIC was received by the IRS on November 30, 2008, and denied on March 16, 2009.  Id., Ex. E, p. 40.  The Account Transcript also confirms that a second OIC was received on May 23, 2011, and denied on September 16, 2011.  Id.  The Clinkscales do not dispute the validity of the Account Transcript.

The Sixth Circuit has recognized that an OIC ceases to be pending for purposes of the statute of limitations when an IRS officer, in writing, "accepts, rejects or acknowledges withdrawal of the offer."  *See also United States v. Donovan,* 348 F.3d 509, 512 (6th Cir.2003).  Here the IRS Account Transcript indicates that the May 23, 2011, OIC was denied/rejected on September 16, 2011.  The Clinkscales have provided no evidence to the contrary.

In addition, although the Clinkscales claim in their opposition that they were "not accepted into the [OIC] program for their [May 23, 2011,] filing," they have provided no support for that assertion.  Doc. 30, p. 2.  The Account Transcript summary for both the November 3, 2008, OIC and the May 23, 2011, OIC are consistent and, based on the Account Transcript, there is no indication that the May 23, 2011, OIC was treated any differently by the IRS than the

November 3, 2008, OIC.  In response to a motion for summary judgment, the non-moving party

"may not rest merely on allegations or denials in its own pleading" and must present "significant

probative evidence" to show that there is more than "some metaphysical doubt as to the material

facts." Fed.R.Civ.P. 56(e)(2); *see Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Searcy v. City of*

*Dayton,* 38 F.3d 282, 286 (6th Cir.19 94); *Moore v. Philip Morris Co.,* 8 F.3d 335, 339–40 (6th

Cir.1993).  The Clinkscales failed to present any evidence to show that there is more than "some

metaphysical doubt as to the material facts."

Based on the above, there are no genuine issues of material fact with regard to the

Clinkscales' federal income tax liability for tax years 1994-1997 and the United States is entitled

to judgment as a matter of law.  Thus, the United States is granted summary judgment in its favor

and the Court orders that the Clinkscale's owe federal income tax liability in the amount of

$1,078,372.81, plus statutory additions and accruals from October 31, 2013.

### B.      Judicial Sale of Property

The United States also requests, pursuant to 26 U.S.C. § 6321, a forced sale of  the real

property owned by the Clinkscales and located at 2934 Anderson Morris Road, Niles, OH

44446, which is further described in ¶10 of the Complaint ("Anderson Morris Road property").

Doc. 1, p. 4 (see also http://property.co.trumbull.oh.us/Data.aspx?ParcelID=12-764052, last

viewed on 7/25/2014).  Section 6321, in pertinent part, provides:

> "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand,
> the amount ... shall be a lien in favor of the United States upon all property and rights to
> property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The
> Supreme Court has held that § 6321 "is broad and reveals on its face that Congress meant
> to reach every interest in property that a taxpayer might have."

*United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 719–20, 105 S.Ct. 2919, 86 L.Ed.2d 565

(1985) ("The statutory language 'all property and rights to property,' appearing in § 6321…is

broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have."); *see also Glass City Bank v. United States,* 326 U.S. 265, 267, 66 S.Ct. 108, 90 L.Ed. 56 (19*45*) ("Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes."). In their answer, the Clinkscales admit that they own the Anderson Morris Road property. Answer, Doc. 9, p. 2, ¶11. In their opposition to summary judgment, the Clinkscales do not dispute the United States' contention that federal tax liens attached to that property for tax years 1994-1997. Doc. 30.

A taxpayer's failure to pay a federal tax assessment after notice and demand results in a federal tax lien upon all of the taxpayer's property, including property subsequently acquired by the taxpayer. 26 U.S.C. §§ 6321 & 6322; *United States v. Dishman Independent Oil, Inc.,* 46 F.3d 523, 525 (6th Cir.19*95*); *United States v. Hughel,* 20 F. Supp. 2d 1154, 1157 (S.D. Ohio 1*997*); *United States v. Big Value Supermarkets, Inc.,* 898 F.2d 493, 496 (6th Cir.19*90*) (The §6321 lien attaches to all of a taxpayer's property.) Tax liens are not, however, self-enforcing. *Nat'l Bank of Commerce,* 472 U.S. at 720. Pursuant to 26 U.S.C. § 7403(a), the government is authorized to file suit in the United States district courts in order to enforce a tax lien. *See Bank of Fraser v. United States,* 861 F.2d 954, 958 (6th Cir.19*88*).

The Government may enforce the lien by filing an action in district court and naming as parties all persons having an interest in the property subject to the lien. 26 U.S.C. § 7403(a)-(b). If the court finds in favor of the Government, the court may enforce the lien by "decree[ing] a sale of such property ... and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." *Id.* § 7403(c). The purpose of this scheme "is to ensure the prompt and certain enforcement of the tax laws in a system relying primarily on self-reporting." *United States v. Rodgers,* 461 U.S. 677, 683, 103

S.Ct. 2132, 76 L.Ed.2d 236 (19 83).  Foreclosure and forced sale, with proceeds of the sale divided equitably between the United States and other parties claiming an interest in the property, will normally be the proper resolution of a § 7403 action.  *See id.* at 693–94. ("[W]e must read the statute to contemplate, not merely the sale of the delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any 'claim or interest' in it), and the recognition of third-party interests through the mechanism of judicial valuation and distribution.").  In fact, because the federal government has a paramount interest in the "prompt and certain" collection of delinquent taxes, the Court's exercise of its discretion *not* to order a sale must be applied "rigorously and sparingly."  *Rodgers,* 461 U.S. at 711.  There are "virtually no circumstances, for example, in which it would be permissible to refuse to authorize a sale simply to protect the interests of the delinquent taxpayer himself or herself."  *Id.,* 461 U.S. at 709.  The Supreme Court held that, once a tax lien properly attaches to jointly-held marital property, a district court may order a forced sale of that property.  *Id.,* at 693-94.  Further, "although the definition of underlying property interests is left to state law, the consequences that attach to those interests is a matter left to federal law."  *Id.* at 683.

The evidence in this case establishes that the Clinkscales were assessed federal income tax penalties, additional tax, and interest for tax year 1997 on July 2, 2001.  Doc. 29-2, pp. 3-4, 26-27.  Subsequently, on April 3, 2006, the Clinkscales were assessed federal income tax penalties, additional tax, and interest for tax years 1994-1996.  Id. at pp. 1-3; Doc. 29-1, pp. 19-20, 26-27, 32-33, 39-40.  Despite notice and demand the Clinkscales failed to pay the assessed tax liabilities.  Doc. 29-2, ¶6.  Thus, a tax lien was automatically imposed upon any property or right to property owned by the Clinkscales at the time of the assessments.  26 U.S.C. § 6322.

Moreover, in 2006, the IRS affirmatively recorded tax liens on the Clinkscales assets for tax years 1994-1997.  Doc. 29-1, pp. 20, 27, 33, 39.

The Clinkscales raise no challenge to the United States' fiscal determination of the Clinkscales' tax liability; the United States' determination that the Clinkscales own the Anderson Morris Road property; or the United States' position that a federal tax lien attached to such property.  Thus, there are no genuine issues of material fact and the United States is entitled to judgment as a matter of law.


### IV  Conclusion

For the foregoing reasons, the Court **GRANTS** the United States' Motion for Summary Judgment (Doc. 29) and enters judgment against the Clinkscales in the amount of $1,078,372.81, plus statutory additions and accruals from October 31, 2013.  Further, the Court **ORDERS** the United States and Defendant Trumbull County to submit a joint proposed order for a sale of the Anderson Morris Road property, which indicates the proposed distribution of proceeds of such sale between the United States and Trumbull County, within 60 days of this Order.

IT IS SO ORDERED.


Dated: July 30, 2014

_____
Kathleen B. Burke
United States Magistrate Judge

14